UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANAPOLIS RACQUET CLUB, INC., | ) ) ) | |
| *Plaintiff* | ) ) | Cause No. 1:22-cv-471-RLM-MKK |
| v. | ) ) | |
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) | |
| *Defendant* | | |

OPINION AND ORDER

Indianapolis Racquet Club sued the Cincinnati Insurance Company, seeking declaratory relief regarding the parties' rights and obligations under an insurance policy as well as damages for breach of contract. The court granted the parties' joint motion to stay for a relevant state court case and then denied the Club's subsequent motion to stay during another appeal in the same state court case. Cincinnati Insurance's motion to dismiss is now before the court. For the following reasons, the court grants the motion.

I.   STANDARD OF REVIEW

A court considering a Rule 12(b)(6) motion to dismiss construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010). A

1

complaint must have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and must have enough factual matter to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).

A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). The plaintiff must allege enough details about the case's subject matter "to present a story that holds together." Bilek v. Fed. Ins. Co., 8 F.4th 581, 586 (7th Cir. 2021) (citation omitted). A complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 557). The court may consider "documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (citation omitted).

II.    BACKGROUND

The Club runs a membership facility offering tennis courts, a fitness center, tennis lessons, and a pro shop. The Club also operates a team sales business, which sells tennis apparel and equipment to schools. The Club insured its properties through Cincinnati Insurance.

The insurance policy includes building and personal property coverage, business income coverage, civil authority coverage, and crisis event expense coverage. The property and business income forms contain the same coverage requirement: Cincinnati Insurance will "pay for the actual loss of Business Income [the Club] sustain[s] due to the necessary suspension of [the Club's] operations during the period of restoration. The suspension must be caused by direct loss to property at premises . . . . The loss must be caused by or result from a Covered Cause of Loss." [Doc. No. 1-1 (internal quotation marks omitted)].

The policy defines the following relevant terms:

- "Loss" as "accidental physical loss or accidental physical damage;"

- "Suspension" as "the slowdown or cessation of . . . business activities," such that "a part or all of the 'premises' is rendered untenable;"

- "Operations" as "business activities occurring at the 'premises;'"

- "Period of Restoration" as "(a) . . . (b) end[ing] on the earlier of: (1) The date when the property . . . should be repaired, rebuilt, or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location;" and

- "Covered Cause of Loss" as "direct loss, unless the loss is excluded or limited" by the policy.

To trigger coverage under the policy's civil authority provisions, there must be direct physical loss to property other than the insured's property, and civil

authorities must issue orders prohibiting access to the insured property because of the loss or damage.

Under the crisis event expense coverage form, Cincinnati Insurance "will pay for the actual loss of crisis event business income [the Club] sustain[s] due to the necessary suspension of [the Club's] operations during the crisis event period of restoration. The suspension must be caused by or result from a covered crisis event at [the Club's] covered premises. This coverage will . . . end the earlier of (1) The date [the Club] could restore [its] operations with reasonable speed, to the level which would generate the Business Income amount that would have existed if no covered crisis event occurred; or (2) Sixty (60) consecutive days after the covered crisis event occurred." [Doc. No. 1-1 (internal quotation marks omitted)].

"Covered crisis event" is defined in relevant part as "[t]he necessary closure of all or part of [the Club's] covered premises due to any sudden, accidental and unintentional contamination or impairment of the covered premises which results in clear, identifiable, internal or external visible symptoms of bodily injury, illness or death of any person. This includes covered premises contaminated by covered communicable disease . . . ." "Covered communicable disease" is defined as "any disease or any related or resulting . . . viruses . . . except this endorsement does not apply to any loss directly or indirectly attributable to . . . any pandemic or similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may

cause global outbreak, or pandemic, or serious illness." The other types of coverage in the policy don't list this exclusion.

At multiple points between March 2020 and June 2021, state and local officials issued orders requiring businesses to close or limit occupancy in response to the COVID-19 pandemic. The Club's property was affected by these orders, which caused it to suffer financial losses.

The Club's complaint alleges that the SARS-CoV-2 virus is a physical substance that can survive for nearly a month at room temperature on certain surfaces. It says the virus transforms the material content of air, and once introduced, it is difficult to remove with standard ventilation systems. It also says the virus "adsorbs" onto surfaces through intermolecular electric interactions. It alleges surface disinfection has "little impact on reducing estimated risks of virus transmission." [Doc. No. 3-2 at 5 (citation omitted)]. The Club alleges that it confirmed the existence of the SARS-CoV-2 virus at its properties and knows of employees and instructors who tested positive for the virus. Accordingly, the Club alleges that "[t]he presence of the SARS-CoV-2 [virus] has physically altered the indoor air and surfaces" at its properties, "damaging them and rendering them unsafe, uninhabitable, and/or unsuitable for their intended purposes."

The Club submitted a claim to Cincinnati Insurance seeking coverage for its pandemic-related losses. Cincinnati Insurance denied coverage, reasoning

that the mere presence of the SARS-CoV-2 virus isn't enough to show any direct physical loss to the Club's property as required by the policy.

The Club filed this case in state court, alleging Cincinnati Insurance wrongfully denied coverage because "direct physical loss" doesn't require any physical alteration to the property, or alternatively because the SARS-CoV-2 virus physically alters air and surfaces. The Club seeks declaratory judgment that the policy covers its pandemic-related losses, as well as damages for breach of contract. Cincinnati Insurance removed the case to this court and moves to dismiss both counts.

## III.   DISCUSSION

The court's jurisdiction to hear this case arises from the parties' diverse citizenship, so state substantive law provides the rule of decision. Goesel v. Boley Int'l (H.K.) Ltd., 806 F.3d 414, 419 (7th Cir. 2015) (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)). The parties agree that Indiana law applies to this insurance policy dispute. The Indiana Supreme Court has yet to rule on the question at issue in this motion, so the court "'must apply Indiana Law by doing [its] best to predict how the Indiana Supreme Court would decide' the issue." Circle Block Partners, LLC v. Fireman's Fund Ins. Co., No. 1:20-cv-02512-JPH-MJD, 2021 WL 3187521, at *3 (S.D. Ind. July 27, 2021) (alteration in original) (citations omitted), *aff'd*, 44 F.4th 1014 (7th Cir. 2022).

"Insurance contracts 'are governed by the same rules of construction as other contracts.'" <u>G&G Oil Co. of Ind., Inc. v. Cont'l W. Ins. Co.</u>, 165 N.E.3d 82, 86 (Ind. 2021) (quoting <u>Justice v. Am. Fam. Mut. Ins. Co.</u>, 4 N.E.3d 1171, 1175 (Ind. 2014)). The court construes the policy as a whole, and "should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." <u>Mahan v. Am. Standard Ins. Co.</u>, 862 N.E.2d 669, 676 (Ind. Ct. App. 2007) (citation omitted). The court must give clear and unambiguous policy language its ordinary meaning. <u>Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.</u>, 983 N.E.2d 574, 577 (Ind. 2013) (citation omitted).

Cincinnati Insurance argues the court should dismiss this case because the Club hasn't alleged any direct physical loss or damage and so hasn't stated a claim for coverage. It says that the direct physical loss or damage requirement isn't ambiguous, and it requires the insured's property to suffer physical or structural alterations or damage to trigger coverage. The Club doesn't dispute that it must allege physical alteration or damage, but it argues its allegation that coronavirus particles physically and chemically alter air and surfaces meets this requirement.

As a preliminary matter, the Club asserts that the court should consider Cincinnati Insurance employee emails and other insurance industry communications that it didn't attach to the complaint to decide that the "physical loss or damage" language is ambiguous and that the Club's interpretation of the term is reasonable. Federal Rule of Civil Procedure 12(d) requires that if "matters

outside the pleadings are presented to and not excluded by the court, the motion [under Rule 12(b)(6)] must be treated as one for summary judgment under Rule 56." The Club seems to request that the court avoid Rule 12(d) by taking judicial notice of these communications as "legislative facts." *See* United States v. Arroyo, 310 F. App'x 928, 929 (7th Cir. 2009) (legislative facts encompass statutes and geographic boundaries, whereas adjudicative facts involve the facts of the case); Qualley v. Clo-Tex Int'l, Inc., 212 F.3d 1123, 1128 (8th Cir. 2000) (legislative facts are facts "wholly unrelated to the activities of the parties" (citation omitted)).

Because the communications relate to Cincinnati Insurance's activities and the facts of this case, the court won't take judicial notice of them as legislative facts. Nor would it be appropriate to take judicial notice of them as adjudicative facts. *See* Gen. Elec. Cap. Corp. v. Lease Resol. Corp., 128 F.3d 1074, 1081 (7th Cir. 1997) ("A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" (citations omitted)).

Besides, the parties have already briefed whether the Club may use external documents to support its response to this motion to dismiss without Rule 12(d) coming into play. [Doc. Nos. 20, 38, 41, 45, 46]. Magistrate Judge Dinsmore denied the Club's request for discovery related to Cincinnati Insurance's policy drafting history or guidelines for interpreting the policy's

forms, correctly rejecting the same arguments that the Club has offered here. [Doc. No. 56].[1] The court can't consider the Club's evidence without applying the summary judgment standard under Rule 12(d).

The court shouldn't consider the communications, so there's no need for the court to treat the motion as one for summary judgment. Under Indiana law, "courts may construe . . . ambiguous policy terms only." <u>Erie Indem. Co. v. Estate of Harris</u>, 99 N.E.3d 625, 630 (Ind. 2018) (citation omitted). A term is ambiguous only if it is "susceptible to more than one reasonable interpretation." <u>G&G Oil Co. of Ind., Inc. v. Cont'l W. Ins. Co.</u>, 165 N.E.3d 82, 86 (Ind. 2021) (citation omitted). "[A] term is not ambiguous by the mere fact that the parties differ as to its meaning. Nor is a term necessarily ambiguous if a particular policy does not define the term." <u>Id.</u> at 87 (citing <u>Haag v. Castro</u>, 959 N.E.2d 819, 821-822 (Ind. 2012)). "[P]arties to an insurance contract may not invite judicial construction by creating ambiguity." <u>Erie Indem. Co. v. Estate of Harris</u>, 99 N.E.3d at 630.

Indiana courts look to the "four corners" of the contract to decide whether a term is ambiguous, and they have rejected attempts to introduce external evidence to demonstrate ambiguity. *See, e.g.*, <u>Care Grp. Heart Hosp., LLC. v. Sawyer</u>, 93 N.E.3d 745, 756 (Ind. 2018) ("[W]hen the contract terms are

---

[1] [Doc. No. 56 at 4 n.3 ("Plaintiff . . . argues that the Court could take judicial notice of the documents because they constitute 'legislative facts,' not 'adjudicative facts.' However, as the case quoted by Plaintiff demonstrates, legislative facts are 'wholly unrelated to the activities of the parties.' Here, the documents in question relate directly to the actions of Defendant in drafting and interpreting Defendant's insurance policies. Taking judicial notice of such documents would not be appropriate." (citation omitted))].

unambiguous, . . . we do not go beyond the four corners of the contract to investigate meaning. In other words, we will not consider extrinsic evidence . . . ." (citations omitted)); <u>Bar Plan Mut. Ins. Co. v. Likes L. Off., LLC</u>, 44 N.E.3d 1279, 1285 (Ind. Ct. App. 2015) ("[T]he parties' intent is to be determined by reviewing the language contained within the 'four corners' of the contract, and 'parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence.' Extrinsic evidence cannot be used to create an ambiguity." (quoting <u>Adams v. Reinaker</u>, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004)); <u>Villas at Winding Ridge v. State Farm Fire & Cas. Co.</u>, 942 F.3d 824, 830 (7th Cir. 2019).

The Club references <u>Am. States Ins. Co. v. Kiger</u> to suggest that the court should consider the external communications to determine whether the policy is ambiguous. *See* 662 N.E.2d 945 (Ind. 1996). But, as Judge Dinsmore already indicated, it's not clear whether the <u>Am. States Ins. Co. v. Kiger</u> court considered the evidence to decide that a term was ambiguous, or it decided the term was ambiguous and then used the external evidence to illustrate a reasonable interpretation. [Doc. No. 56 at 7]. That the cases since <u>Am. States Ins. Co. v. Kiger</u> have rejected the former approach makes the Club's proposed reading unpersuasive.

Moreover, the Indiana Court of Appeals—the highest Indiana court to decide the questions at issue in this case—and the federal circuit court of

10

appeals have already determined that the direct physical loss or damage language isn't ambiguous. Ind. Repertory Theatre v. Cincinnati Cas. Co. (IRT I), 180 N.E.3d 403 (Ind. Ct. App. 2022); see Circle Block Partners, LLC v. Fireman's Fund Ins. Co, 44 F.4th 1014, 1023 (7th Cir. 2022) ("We have a hard time imagining that a reasonably intelligent policyholder would share such an expansive understanding of that phrase."). The court agrees and won't consider the external evidence to create an ambiguity.

Turning to the meaning of direct physical loss or damage, IRT I rejected the plaintiff's "loss of use" claim, reasoning that although the building was unusable for its intended purpose, the building wasn't "destroyed or altered in a physical way that would require restoration or relocation" and so hadn't suffered any direct damage or alteration. IRT I, 180 N.E.3d at 410. The Indiana Court of Appeals has since also rejected the plaintiff's alternative argument that the virus's presence causes physical loss or damage. Ind. Repertory Theatre, Inc. v. Cincinnati Cas. Co. (IRT II), -- N.E.3d --, 2023 WL 1950974 (Ind. Ct. App. Feb. 13, 2023).[2]

The federal circuit court reached the same outcome as IRT I and IRT II while deciding a case under Indiana law. Circle Block Partners, LLC v. Fireman's Fund Ins. Co., 44 F.4th 1014 (7th Cir. 2022). The court rejected the argument that the virus's presence on surfaces or in the air could physically alter property.

---

[2] IRT II was decided after this motion to dismiss became ripe. Cincinnati Insurance moved to file IRT II as supplemental authority. [Doc. No. 68]. The Club hasn't responded to that motion.

Id. at 1020-1021; *see also* E. Coast Ent. of Durham, LLC v. Hous. Cas. Co., 31 F.4th 547, 551 (7th Cir. 2022); Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co., 514 F. Supp. 3d 1217, 1225-1226 (S.D. Cal. 2021). The court also rejected the plaintiff's claim that the virus damages property by adding dangerous viral particles to surfaces: "[t]he fact that 'material matter' has been added to . . . surfaces does not mean [the plaintiff's] property has been harmed." Circle Block Partners, LLC v. Fireman's Fund Ins. Co., 44 F.4th at 1022 (citations omitted). These cases reflect the "growing national consensus regarding the meaning of 'direct physical loss.'" E. Coast Ent. of Durham, LLC v. Hous Cas. Co., 31 F.4th at 551 (meaning "does not turn on variations in state contract law").

These authorities are unanimous and instructive. To state a claim for coverage under the policy, the Club must allege that the virus physically altered its properties, and the Club's claim that the virus physically alters the air by being suspended in it and surfaces by being attached to them doesn't meet this requirement. The plaintiffs in IRT I, IRT II, and Circle Block Partners made substantially the same allegations and arguments that the Club now tries to advance, including that the virus binds to surfaces and cleaning and air filtration are ineffective. The Indiana Court of Appeals and the federal circuit court uniformly rejected those allegations.

Circle Block Partners is binding authority. Reiser v. Residential Funding Corp., 380 F.3d 1027, 1029 (7th Cir. 2004) ("Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so [too

must] district judges . . . follow the decisions of this court whether or not they agree." (citations omitted)). The court must follow the circuit court's ruling unless and until the Indiana Supreme Court provides authority requiring a different outcome. *See* id. ("A decision by a state's supreme court terminates the authoritative force of [the Seventh Circuit's] decisions interpreting state law . . . .").

Circle Block Partners reaches the same outcome, applying largely the same reasoning, as IRT I and IRT II. In the absence of a decision by the Indiana Supreme Court, the court gives great weight to decisions by the Indiana Court of Appeals. Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002) ("[F]ederal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently . . . ." (citations omitted)). The court has no reason to suspect that the Indiana Supreme Court would decide this issue differently. Following the guidance from the state and federal courts of appeal, the factual allegations in the Club's complaint fail to state a claim, so dismissal is warranted.

The parties' other arguments confirm this conclusion. Cincinnati Insurance asserts that reading the policy as whole supports requiring a demonstrable alteration. It points to the "period of restoration" language in the policy: the period ends when the property is "repaired, rebuilt, or replaced" or "when business is resumed at a new permanent location." The courts in both

Circle Block Partners and IRT I also used this language in the respective insurance policies to reinforce that if there isn't anything to repair, rebuild, or replace, then there is no physical alteration. 44 F.4th at 1019-1020; 180 N.E.3d at 408, 410. The court agrees with the reasoning in Circle Block Partners and IRT I: allowing the Club's claims to proceed would make this language in the policy superfluous. Under the rules of contract interpretation, the court won't construe the policy in a way that would make part of the policy meaningless or ineffective.

The Club tries to distinguish Circle Block Partners on multiple grounds. First, it points out that the insurance policy in that case excluded air. But that doesn't appear to have been dispositive to the circuit court's reasoning, and the federal court of appeals reached the same outcome in other cases involving comparable policies that didn't exclude air. *See, e.g.,* E. Coast Ent. of Durham, LLC v. Hous. Cas. Co., 31 F.4th 547 (7th Cir. 2022); Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co., 33 F.4th 417, 421 (7th Cir. 2022); Sandy Point Dental, P.C., v. Cincinnati Ins. Co., 20 F.4th 327, 336 (7th Cir. 2021). It would be unreasonable to distinguish Circle Block Partners based on this difference between the policies.

The Club also argues that the virus can't be fully contained and cleaning is ineffective or less effective than it is for other substances or conditions, so this case requires a different outcome from Circle Block Partners. But the federal court of appeals addressed this argument too: "conditions like those 'generally

14

involv[ing] persistent physical contamination that requires repair or replacement, rather than cleaning and disinfecting,'" satisfy the physical alteration requirement. Circle Block Partners, LLC v. Fireman's Fund Ins. Co., 44 F.4th at 1020. That "cleaning efforts may be less effective in eradicating the virus than was previously understood" doesn't mean the property has been physically altered or damaged. Id. at 1020 n.2; see also IRT II, 2023 WL 1950974, at *3 (no physical alteration because the virus can be cleaned or simply dies on its own). The Club doesn't otherwise explain why the line between cleaning and repairing or replacing shouldn't apply in this case, and it hasn't alleged that the virus's presence in its air or connection to its surfaces have required it to repair or replace anything.

The Club also argues that Circle Block Partners is an outlier, and courts have since changed course to conclude that insurance policies cover pandemic-related losses. None of the cases that the Club references are from Indiana or any other state or federal court within this circuit. That a handful of courts in other jurisdictions have taken a different approach doesn't change this court's duty to decide cases such as this under Indiana law. So far, courts deciding this issue under Indiana law have been unanimous that there is no coverage in this situation. See IRT II, 2023 WL 1950974; Stant USA Corp. v. Factory Mut. Ins. Co., No. 1:21-cv-00253-SEB-TAB, 2022 WL 326493, at *4 (S.D. Ind. Feb. 3, 2022) (collecting cases).

15

Similarly, the Club argues that the court should rely on non-pandemic cases to guide its analysis. The Club proposes a different reading of the policy language based on cases involving dangerous substances such as ammonia or asbestos: it argues that the "presence of the physical substance satisfies the word 'physical,' and if that substance renders the property dangerous, then there is a 'loss.'" [Doc. No. 61 at 25]. But both <u>IRT I</u> and <u>IRT II</u> explicitly distinguished dangerous substance cases from cases dealing with COVID-19: <u>IRT I</u> noted that the insurance policies in those cases provided coverage for the "risk of loss," whereas the Cincinnati companies' insurance policies don't cover risk. 180 N.E.3d 403, 409 (Ind. Ct. App. 2022); *see also* <u>Q Excelsior Italia Srl v. Zurich Am. Ins. Co.</u>, No. 21 C 1166, 2022 WL 17093361, at *3 (N.D. Ill. Nov. 21, 2022) (distinguishing noxious substances cases under Illinois law). The Club's insurance policy likewise doesn't provide coverage for the risk of loss, only for direct physical loss or damage.

<u>IRT II</u> also distinguished the dangerous substance cases, reasoning that such substances left property "physically unusable or uninhabitable," whereas the SARS-CoV-2 virus doesn't. 2023 WL 1950974, at *3-4. The Club's complaint states that the virus's presence made its insured property "unsafe, uninhabitable, and/or unsuitable for their intended purposes," but other courts have already rejected this assertion. *See, e.g.*, <u>id.</u> at *4; <u>Sandy Point Dental, P.C. v. Cincinnati Ins. Co.</u>, 20 F.4th 327, 334 (7th Cir. 2021) (no direct physical loss where "preferred use of the premises was partially limited"). The court agrees

with these grounds for distinguishing these cases, and it will follow the pandemic cases.

The Club points out that the building and property and business income sections of the policy don't exclude coverage for certain communicable diseases, but some of the policy's other coverage forms do. It argues that this means Cincinnati Insurance meant to provide coverage for business income losses relating to communicable diseases under the building and property and business income sections. But exclusions don't matter unless the insured first shows that the policy covers its claim. *See* Hartford Cas. Ins. Co. v. Evansville Vanderburgh Pub. Library, 860 N.E.2d 636, 646 (Ind. Ct. App. 2007) ("[I]f the insuring clause does not extend coverage, one need look no further. If coverage exists, exclusions must then be considered." (citation omitted)). "Exclusion clauses do not grant or enlarge coverage; rather, they are limitations on the insuring clause." Id. (citation omitted). The Club hasn't alleged direct physical loss or damage, so its claim isn't covered by the policy, and accordingly, the court need not consider the exclusion (or lack of exclusion) in the relevant parts of the policy.

The Club's complaint also alleges, and it asserts in its briefing, that the virus's presence physically altered its property so it has stated a claim upon which relief can be granted. But including this type of conclusory statement doesn't mean that the Club has met the pleading requirements. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (pleading offering "labels and conclusions, . . . formulaic recitations of the elements of a cause of action . . . [, or] naked

assertions devoid of further factual enhancement" aren't sufficient (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007)).

The Club also argues that the court shouldn't dismiss this case because it involves scientific claims that "cannot be decided as a matter of law at the pleadings stage." [Doc. No. 61 at 29]. The Club says the court owes a duty to exercise "special care" in admitting or excluding scientific evidence under the Federal Rules of Evidence. But the plaintiffs in <u>Circle Block Partners</u> and <u>IRT II</u> both presented similar, if not the same, scientific allegations that the Club now offers. The Indiana Court of Appeals and the circuit court weren't swayed by such allegations, <u>IRT II</u>, 2023 WL 1950974, at *2 (evidence that virus binds to surfaces and that air filtration and cleaning are ineffective don't establish physical alteration); <u>Circle Block Partners, LLC v. Fireman's Fund Ins. Co.</u>, 44 F.4th at 1020 (rejecting argument that virus adsorbing onto surfaces satisfies direct physical loss or damage requirement), and the court isn't persuaded that it can't decide this motion to dismiss simply because the complaint includes scientific allegations. The nature of the complaint doesn't change that the Club hasn't alleged direct physical loss or damage and so hasn't stated a claim under Indiana law.

Cincinnati Insurance also argues that it doesn't have to provide coverage under the civil authority coverage portion of the policy. It asserts that the Club hasn't alleged direct physical loss or damage or that any governmental orders were issued prohibiting access to the property because of the loss or damage.

The Club doesn't devote much time to responding to these arguments; it simply incorporates its arguments about the other types of coverage. As already discussed, the Club hasn't sufficiently alleged direct physical loss or damage, and it follows that it also hasn't alleged direct physical loss to "other property" as required by the policy. Nor does the Club's complaint allege facts suggesting that the COVID-19 orders prohibited access to its property; rather, the orders limited public access but still permitted employee access. *See* [Doc. No. 16-2 at 8];[3] Sandy Point Dental, P.C. v. Cincinnati Ins. Co., 488 F. Supp. 3d 690, 694 (N.D. Ill. 2020), *aff'd*, 20 F.4th 327 (7th Cir. 2021) ("[W]hile coronavirus orders have limited plaintiff's operations, no order issued . . . prohibits access to plaintiff's premises. (citation omitted)). The Club hasn't stated a claim for coverage under the civil authority form.

Finally, Cincinnati Insurance asserts that the Club hasn't stated a claim for coverage under the crisis event portion of the policy. The Club mentions the crisis event coverage in the complaint in passing, and it doesn't respond to Cincinnati Insurance's arguments that it hasn't stated a claim under the crisis event coverage form. The Club only discusses the crisis event coverage form in its response to this motion to support its arguments about the communicable disease exclusions. From the coverage denial letter Cincinnati Insurance sent to

---

[3] The Club didn't attach copies of the executive orders to its complaint, but the court may consider "documents attached to a motion to dismiss when they are referenced in the complaint and central to the plaintiff's claim." Lax v. Mayorkas, 20 F.4th 1178, 1181 n.1 (7th Cir. 2021) (citation omitted). Accordingly, the court takes the executive orders into consideration.

the Club, it appears the Club hasn't sought crisis event coverage, or at least hasn't had a request for coverage denied. [Doc. No. 3-2]. The court won't interpret the Club's passing reference to the crisis event coverage form in the complaint as an attempt to state a claim for coverage, and to the extent that the Club did intend to state a claim under the crisis event coverage form, it hasn't done so. *See* Cmty. Bank of Trenton v. Schnuck Mkts., Inc., 887 F.3d 803, 811 (7th Cir. 2018) ("A party must . . . 'proffer some legal basis to support [its] cause of action' and cannot expect . . . the district court . . . to 'invent legal arguments' on [its] behalf." (quoting Cnty. of McHenry v. Ins. Co. of the W., 438 F.3d 813, 818 (7th Cir. 2006))).

IV.   CONCLUSION

The court is sympathetic to the plight of local businesses grappling with the impact that the COVID-19 pandemic has had, and will likely continue to have, on them, but the court must decide this case consistently with the policy's language and applicable precedent. The court "cannot create law where none exists. To do so would impermissibly 'place the whole rights and property of the community under the arbitrary will of the Judge . . . .'" Mashallah, Inc. v. W. Bend Mut. Ins. Co., No. 20 C 5472, 2021 WL 679227, at *5 (N.D. Ill. Feb. 22, 2021) (alteration in original) (quoting Grupo Mexican de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 332 (1999)). The Club's complaint doesn't state a claim for which relief can be granted.

20

The court GRANTS Cincinnati Insurance's motion to submit supplemental authority, [Doc. No. 68], and GRANTS its motion to dismiss, [Doc. No. 15]. Because amendment would be futile, dismissal is with prejudice. *See* Georgetown Dental, LLC v. Cincinnati Ins. Co., No. 1:21-cv-00838-TWP-MJD, 2021 WL 1967180, at *10 (S.D. Ind. May 17, 2021); Hukic v. Aurora Loan Servs., 588 F.3d 420, 432 (7th Cir. 2009). The court DENIES as moot any pending motions in this case, VACATES all scheduled hearings and conferences, and DIRECTS the Clerk to enter judgment for Cincinnati Insurance.

SO ORDERED.

ENTERED: March 1, 2023

 /s/ Robert L. Miller, Jr.
Judge, United States District Court

Distribution to all counsel of record via CM/ECF.